IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:07cv19

| | |
|---|---|
| BFS RETAIL & COMMERCIAL OPERATIONS, LLC, ) ) ) Plaintiff, ) ) Vs. ) ) CITY OF ASHEVILLE, ) ) Defendant. ) _____ ) | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the court on defendant's Motion to Dismiss (#9), plaintiff's Response (#13), and defendant's Reply (#16). Having carefully considered those motions and reviewed current case law, the court enters the following findings, conclusions, and Recommendation

**FINDINGS AND CONCLUSIONS**

**I.    Background**

For the limited purpose of the pending Motion to Dismiss the court has accepted all allegations of the Complaint as true.

Plaintiff is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in Bloomingdale, Illinois. Compl., at ¶ 1. Plaintiff leased a retail store located at 85 Tunnel Road, Asheville, North Carolina (hereinafter the "Firestone Store"). Compl., at ¶ 6.

Defendant is the City of Asheville ("Defendant"), which is a North Carolina municipality. Compl., at ¶ 2. Plaintiff contends that defendant operates and maintains

water lines within the city limits as a proprietary function, making the doctrine of governmental immunity inapplicable. Compl., at ¶ 3.

The Tunnel Road building leased by plaintiff was constructed in 1965, Compl., at ¶ 7, and two sixteen-inch water mains were located under the store in 1964. Compl., at ¶ 8. On or about November 30, 2004, a representative of the City of Asheville contacted the manager of the plaintiff's store to inform the manager that the City of Asheville would be working on the water mains and would be required to turn off the water to the store than evening from 11:00 p.m. until 7:00 a.m. Compl., at ¶ 10. On or about December 1, 2004, the Defendant's agents and employees were working near the plaintiff's store on the water mains in order to service those water lines. Compl., at ¶ 9. At approximately 4 a.m. on the morning of December 1, 2004, the manager of the plaintiff's store was contacted by the Asheville Police Department and told that the water mains running under the store had ruptured. Compl., at ¶ 11. As a result of this rupture, the building was damaged structurally, plaintiff's fixtures and equipment were damaged, customer vehicles were damaged, as well as personal belongings of the plaintiff's employees. The building was declared structurally unsound by the City, and the building had to be substantially rebuilt. The landlord was not able to deliver possession back to the plaintiff until on or about October 2005. Compl., at ¶ 12. The plaintiff had to re-fixture the store, and was not able to reopen until on or about October 29, 2005. Id.

Plaintiff contends that as a direct result of the actions of the defendant, the plaintiff suffered significant property damage and loss of revenue, and had to

compensate both its employees and its customers for their property damage. Compl., at ¶ 13.

## II. Plaintiff's Claims and Defendant's Motion to Dismiss

Plaintiff has brought three causes of action: (1) negligence; (2) trespass; and (3) private nuisance. Defendant has moved to dismiss plaintiff's claims for trespass and nuisance, arguing under Rule 12(b)(6) that such claims are "barred" because the "losses of the type alleged by Plaintiff" fall exclusively within North Carolina's inverse condemnation statute.

## III. Applicable Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v.

Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the Complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendant's motion, the court has accepted as true the facts alleged by plaintiff in the Complaint and will view them in a light most favorable to plaintiff.

IV.  **Discussion**

Defendant contends that plaintiff has failed to state claims for trespass and private nuisance because the inverse condemnation action allowed by Chapter 40A-51 "is the sole remedy to a property owner against a municipality, barring claims for trespass or nuisance." Defendant's Brief in Support, at 2. Defendant's argument is

based on North Carolina's inverse condemnation statute, which provides as follows:

> (a) If property has been taken by an act or omission of a condemnor listed in G.S. 40A-3(b) or (c) and no complaint containing a declaration of taking has been filed the owner of the property may initiate an action to seek compensation for the taking. The action may be initiated within 24 months of the date of the taking of the affected property or the completion of the project involving the taking, whichever shall occur later.
>
> * * *
>
> (c) <u>Nothing in this section shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property.</u>

N.C.Gen.Stat. § 40A-51. (emphasis added). While the statute specifically refers to owners, it would appear that lessees as well as owners may commence an inverse condemnation proceeding inasmuch as

> a lessee has standing to litigate its portion of the total award upon condemnation. *See Durham v. Realty Co.*, 270 N.C. 631, 155 S.E.2d 231 (1967).
>
> * * *
>
> Chapter 40A defines "owner" as " any person having an interest or estate in the property." N.C.Gen.Stat. § 40A-2(5) (1984) (emphasis added).

<u>Transcontinental Gas Pipe Line Corp. v. Calco Enterprises</u>, 132 N.C.App. 237, 242-43 (1999).

Chapter 40A-51 was intended to provide owners and others who have an interest in real property with a cause of action to seek inverse condemnation where real property is for all practical purposes taken by act or omission by a lawful condemnor, but only where such condemnor has failed to file a complaint in court seeking condemnation of such property. Prior to the passage of Chapter 40A-51 in 1981, aggrieved land owners were relegated to bringing common law claims for trespass and nuisance against condemnors.

Defendant argues that Chapter 40A-51 preempts plaintiff's common law claims for trespass and nuisance. The undersigned agrees with defendant, but only insofar as an owner or another person with an interest in real property attempts to avoid Chapter 40A-51 (and its two year period of limitations) and bring claims for inverse condemnation by utilizing the pre-1981 method of cobbling claims of trespass or nuisance. Otherwise, it would appear that all common law claims remain available to land owners for damages suffered at the hands of public or *quasi* public authority. Indeed, the statute provides as much: "(c) Nothing in this section shall in any manner affect an owner's common-law right to bring an action in tort for damage to his property." N.C.Gen.Stat. 40A-51. In the factual allegations of the Complaint, the plaintiff alleges in relevant part:

> 12. As a result of this rupture, the building was damaged structurally, the Plaintiff's fixtures and equipment were damaged, customer vehicles were damaged, as well as personal belongings of the Plaintiff's employees. The building was declared structurally unsound by the City, and the building had to be substantially rebuilt. The landlord was not able to deliver possession to the Plaintiff until on or about the second half of October, 2005. The Plaintiff had to fixture the store, and was not able to reopen until on or about October 29, 2005.
>
> 13. As a direct result of the actions of the Defendant, the Plaintiff suffered significant property damage and loss of revenue, and had to compensate both its employees and its customers for their property damage.

Compl., at ¶¶ 12-23.

Plaintiff goes on to allege in seeking damages based on its cause of action for negligence a narrower range of damages:

> 20. As a proximate cause of the Defendant's negligence, Plaintiff

> suffered damages, including significant property damage to inventory and fixtures in the store, and compensating customers and employees for their losses, and Plaintiff suffered significant loss of revenue because the damage caused by the ruptured water mains caused the store to be closed for one year.

Compl., at ¶ 20.

Defendant argues that "[u]nder no set of facts can Plaintiff prevail on a claim for inverse condemnation." Defendant's Brief, at 3. The undersigned agrees with that statement, but not because plaintiff has asserted claims for trespass or nuisance that are preempted, but because plaintiff seeks only monetary damages for its alleged losses. Plaintiff has not requested a declaration of inverse condemnation as remedy for its claims sounding in trespass or nuisance. To hold as defendant suggests would require a finding that a statutory condemnor, when it damages property through proprietary activity, is immune from all common law claims of trespass and nuisance. Certainly, even the City of Asheville is capable of committing a trespass or causing a nuisance, and not all trespasses or nuisances are remedied by a declaration of inverse condemnation. Indeed, the facts alleged in the Complaint would lead to a reasonable inference that the last thing plaintiff would want would be to permanent loss of what appears to be a prime retail location through a declaration of inverse

Plaintiff, a lessee, does not allege a taking or even that defendant substantially interfered with its real property rights, but instead alleged that defendant "substantially interfered with Plaintiff's *use and enjoyment* of its property." Compl., at ¶ 27. While "use and enjoyment" are a substantial aspect of the bundle of sticks constituting property ownership, such a allegation falls short of alleging a *taking* of real property.

−7−

Under Chapter 40A of the North Carolina General Statutes entitled "Eminent Domain", the definition of "property" subject to such eminent domain proceedings, including inverse condemnation, is defined as follows:

> (7) "Property" means any right, title, or interest in land, including leases and options to buy or sell. "Property" also includes rights of access, rights-of-way, easements, water rights, air rights, and any other privilege or appurtenance in or to the possession, use, and enjoyment of land.

N.C.Gen.Stat. § 40A-2(7). Comparing the description of the damages sought by the plaintiff in its Complaint with the statutory definition of "property," the damages sought by the plaintiff are not encompassed within Chapter 40A of the North Carolina General Statutes.

The only category of damage to property sought by plaintiff that gives the undersigned pause as being possibly covered by the statutory scheme is damage to fixtures. As is commonly understood, fixtures are considered to be real property in that they are attached to the land.

> Real fixtures are those which become inseparable from the land and are considered part of the real property due to permanent annexation. *Hughes v. Young*, 115 N.C.App. 325, 328, 444 S.E.2d 248, 250, *disc. review denied*, 337 N.C. 692, 448 S.E.2d 525 (1994); *Webster's Real Estate Law in North Carolina*, § 2-2 (5th ed.1995). However, where the chattel retains its own character and is not permanently annexed to the property, it remains personal property. *Webster's*, § 2-2. The controlling test to determine the nature of a fixture on real property is "the intention with which the annexation is made." *Little v. National Service Industries, Inc.*, 79 N.C.App. 688, 692, 340 S.E.2d 510, 513 (1986) (citation omitted).

Johnson v. Wilder, 2002 WL 31459073, 2 (N.C.App. 2002). A review of the decisions of the North Carolina Appellate Courts shows, however, that even fixtures are not always property subject to inverse condemnation. City of Durham v Woo, 129

-8-

N.C. App. 183, 191, *cert. denied*, 348 N.C. 496 (1998). In Woo, the North Carolina Court of Appeals stated, as follows:

> For purposes of condemnation, 'property' is limited to interests in real property, and does not include personal property. It therefore follows that personal property cannot be taken through an eminent domain proceedings under Chapter 40A.

Id., at 191. Because the damages sought by the plaintiff appear to be losses to personalty such as "damage to inventory and fixtures in the store", "compensating customers and employees for their losses", and "significant loss of revenue," Compl., at ¶ 20, plaintiff's causes of action could not have been brought through an inverse condemnation action as contended by the defendant.

North Carolina courts have long recognized that not every tortious act of a sovereign results in a taking. North Carolina courts have long held that

> In all of these [condemnation] cases the acts of the sovereign in exercise of its governmental powers resulted in the imposing of some more or less permanent servitude upon plaintiffs' property sufficient for the court to find that there had been a taking of a property interest from the citizen by the sovereign. **The acquisition by the sovereign of such an interest, and not the mere incidental damage to the citizen's property by the tortious acts of sovereign's agents, is required before there is a compensable taking of property. Admittedly the line between the two types of situations may not always be precise.**

Bynum v. Onslow County, 1 N.C.App. 351, 355 (1968)(emphasis added). In this case, the acts of defendant imposed no greater servitude on the real property than existed prior to the water line break. To the extent the alleged damage required vacation of the premises for 11 months so that repairs could be made to the pipe and in turn the structure, it cannot be inferred that such activities imposed a "permanent servitude."

In all of the cases cited by defendant in support of the proposition that trespass and nuisance are preempted by Chapter 40A-51, plaintiffs therein alleged that the statutory condemnors committed continuing and permanent trespass. Indeed, Howell v. City of Lumberton, 144 N.C.App. 695 (2001), stands for the proposition that common law claims - - other than those for inverse condemnation - - survive enactment of Chapter 40A-51. Clearly, under Howell, if "a common-law action for negligence by defendant would otherwise be available to plaintiff, it is preserved under N.C.G.S. § 40A-51(c) and not preempted by the inverse condemnation statute." Id., 700.

It follows that if a common-law action for trespass or nuisance is otherwise available to plaintiff, it is preserved under Chapter 40A-51 so long as plaintiff does not claim a *continuing and permanent* trespass and nuisance, or seek inverse condemnation as a remedy.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Dismiss (#9) be **DENIED.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v.

Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: May 16, 2007

/s/ Dennis L. Howell

Dennis L. Howell
United States Magistrate Judge